GRITT, JUDGE:
Claimant brought this action for personal injuries to herself and for damage to her vehicle which occurred when she was operating her vehicle on Roach Truss Bridge in Cabell County, and the vehicle struck both sides of the bridge. Respondent was responsible at all times herein for the maintenance of the Roach Truss Bridge. The Court is of the opinion to deny this claim for the reasons set forth below.
The incident giving rise to this claim occurred on November 8, 1998, at approximately 6:30 p.m. Claimant Marcia Lucas and two of her children, Tinia Stratton and Jonathan Lucas, were traveling in her 1997 Ford Explorer. Claimant was driving her vehicle with her daughter in the front seat and her son seated in the middle of the back seat. All three occupants were wearing their seatbelts at the time of the incident. They had been shopping at the Huntington Mall and were returning to their home in Ferrellsburg, Lincoln County. It was a dark, cloudy evening. It had rained earlier in the day, but it was only sprinkling while the Lucas family was traveling home. Claimant testified that the road surface was not slippery or wet prior to reaching the Roach Truss Bridge. Tinia Stratton recalled that the roads prior to the bridge were wet but neither slippery nor in poor condition. Claimant was traveling Cyrus Creek Road which she was familiar with and often used to get home. However, claimant decided to also use Roach Road which a friend recommended to her as a short cut. According to claimant, she was traveling southwest on Cyrus Creek Road when she approached a stop sign where she turned right onto Roach Road. Claimant had never traveled Roach Road before. She estimated the distance from the stop sign where she turned off Cyrus Creek Road onto Roach Road to the Roach Truss Bridge to be approximately 70 to 100 yards. Upon reaching the one lane bridge, she stopped her vehicle to make sure there was no oncoming traffic approaching from the other side of the bridge. Claimant testified that she cautiously drove onto the bridge traveling approximately 15 to 20 miles per hour. She was approximately one third of the way across the bridge when suddenly something under the vehicle raised it up which caused her to lose control of the vehicle. The claimant’s car started spinning around and did so approximately two or three times. According to claimant, the vehicle made two three hundred sixty degree turns and after the second spin it slammed into the left side of the bridge where the sidewalk is located. The force of the impact caused the vehicle to slide across the bridge and strike the right side of the bridge. After striking the right side of the bridge, the vehicle slid back to the left side of the bridge where claimant believes it came to rest upon a large board which was two inches thick and six inches wide. The force of the initial impact caused both front seat air-bags to deploy. Tinia Stratton was injured slightly by the air bag. Jonathan Lucas was slightly injured when he was tossed around in the back seat. Claimant’s chin and mouth were bleeding as a result of the impact. Once the vehicle stopped, all three occupants got out of the vehicle. Jonathan Lucas testified that as soon as he stepped onto the surface of the bridge, he noticed that there were numerous boards missing around him. He testified that there was one hole large enough for two men to fall through to the river below. He also stated that the guardrail on one side of the bridge was missing and that the surface of the bridge was very slick. All three occupants testified that the bridge was so slick that they had a difficult time walking on it. Claimant also stated that there was a large hole in the bridge where she exited the vehicle and that had she not been warned of it by her son she would have fallen through it. The claimant and her children walked away from the gap in the bridge to the other side where it was relatively safer. They waited on the next passing vehicle for help. Larry Pinkerman, at that time a sergeant with the Cabell County Sheriffs *122 Department (now a Lieutenant), arrived at the scene, as well as an ambulance which took all three individuals to Cabell Huntington Hospital where they were treated and released.
Although claimant’s children did not suffer severe injuries in this incident, claimant herself suffers with pain and limitations in her activities as the result of back injuries which she alleges were caused by this accident.
It is claimant’s position that the respondent negligently failed to maintain and repair the Roach Truss Bridge. Claimant also asserts that respondent failed to place any warning signs indicating that the bridge was slippery when wet. According to the claimant, these acts and omissions created a hazardous condition which was the proximate cause of the claimant’s damages. Claimant testified that many of the boards on the bridge were rotten, loose and protruding. All three occupants of the vehicle testified that the vehicle was lifted up by protruding boards. Claimant submitted into evidence numerous photographs taken approximately one week after the incident which indicate that there were a number of boards in the traveling portion of the bridge protruding upwards. One photograph submitted into evidence showed that a few of the boards protruded as high as six to eight inches. The claimant testified that it was one of these loose and protruding boards that lifted her vehicle up and caused her to lose control and wreck. Claimant also submitted into evidence a bridge inspection report created by respondent on June 8,1998, which states that the bridge’s sidewalk was in poor condition and that several boards around the sidewalk are also “severely loose.” The report also stated that both ends of the bridge had uneven transitions and both asphaltic approach roadways were in poor condition.
Respondent admits that this bridge was not in good condition, but it asserts that the condition of the bridge was not the proximate cause of the claimant’s accident. Respondent asserts that the claimant failed adequately to maintain control of her vehicle and that such failure to maintain control of the vehicle was the proximate cause of this incident.
Lieutenant Larry Pinkerman of the Cabell County Sheriffs Office was the investigating officer at the scene of this incident. He testified that he was notified of the accident at 6:36 p.m. at which time he proceeded to the scene. He recalled that the bridge was wet and slippery when he arrived at the scene. He stated that the bridge was old and in a state of disrepair. However, he did not recall having any difficulties crossing the bridge when he arrived at the scene. He completed the West Virginia Uniform Traffic Accident Report in which he indicated that the surface of the bridge was wet. He also indicated in this report that the claimant’s failure to maintain control was a contributing circumstance, but he testified that he does not know what caused her initially to lose control of the vehicle. He testified that he believed that the claimant was traveling eastbound when this incident occurred, whereas the claimant testified that she was traveling westbound. Lieutenant Pinkerman stated thathe believed the claimant was traveling eastbound due to the fact that this was the direction in which her vehicle was facing when he arrived on the scene. Furthermore, he believed that this bridge was not wide enough for a Ford Explorer to do a three hundred sixty degree turn and stop facing the opposite direction.
Gregory Lee Surber, a bridge repair design engineer for the respondent in Cabell County, testified that the Roach Truss Bridge was built in 1926. It has since been replaced by a new bridge. However, at the time of this incident it was Mr. Surber’s responsibility to design any repairs for the bridge. Mr. Surber described the *123 bridge as a five-span truss type bridge which was approximately 425 feet in length. The width between the trusses on each side of the bridge was 18 feet, not including the sidewalk. Mr. Surber testified that the deck or the surface of the bridge was made of laminated two by six boards. He testified that his office was responsible for making repairs to this bridge but unless there was a “design repair” to be made he' would not be involved personally. He stated that maintenance type repairs are not his responsibilities. He also stated that he was not aware of any calls or reports from the general public regarding the condition of the Roach Truss Bridge prior to this incident. He did not know of this incident until just a few days prior to the hearing of this matter. Mr. Surber recalls making repairs to the Roach Truss Bridge, but he is not sure how long ago this was. He explained that respondent did not have any plans to make repairs to the bridge although he was aware that the boards on the bridge surface were old and worn and that the bridge was in poor condition.
It is a well established principle that the State is neither an insurer nor a guarantor of the safety of motorists on its highways. Adkins v. Sims, 46 S.E.2d 811 (W.Va.1947). However, the State owes a duty of reasonable care and diligence in maintaining its roads under all circumstances. Parsons v. State Road Comm’n, 8 CT. Cl. 35 (1969). To hold respondent liable for road defects or hazards, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the defect or hazard and a reasonable amount of time to take corrective action. Chapman v. Dept. of Highways, 16 Ct. Cl. 103 (1986); Pritt v. Dept. of Highways, 16 Ct. Cl. 8 (1985). Respondent is only held liable for those defective conditions that are the proximate cause of claimant’s damages. Roush v. Johnson, 139 W.Va. 607; 80 S.E.2d 857 (1954). One requisite of proximate causation is the doing of an act or the failure to do an act that a person of ordinary prudence could foresee may naturally or probably produce injury to or the death of another. The second requisite of proximate causation is that such act or omission did in fact produce the injury or death of another. Matthewsv. Cumberland & Allegheny Gas Co. 138 W.Va. 639; 77 S.E.2d 180. This Court has consistently held that an award cannot be based upon mere speculation as to the proximate cause of a claimant’s damages. Mooney v. Dept. of Highways, 16 Ct. Cl. 84 (1986); Phares v. Div. of Highways, 21 Ct. Cl. 92 (1996).
In this claim, claimant has failed to establish by a preponderance of the evidence that the respondent’s failure to maintain the Roach Truss Bridge was the proximate cause of her accident and the resulting damages. The evidence establishes that this bridge was in poor condition and respondent’s own bridge report dated June 8, 1998, demonstrates this fact; however, the problems identified in this report relate more to the sidewalk area, the paint and the approaches to the bridge. The fact that the bridge was in poor condition does not, in and of itself, establish liability. The claimant was unable to identify where on this bridge there was a specific defect that caused her to lose control of her vehicle. Claimant and her two children testified that something hit underneath the vehicle causing it to raise up and subsequently spin out of control, and it was their collective opinion that it was probably a protruding board that caused the vehicle to “raise up” and then spin out of control. However, neither the claimant nor her two children were able to identify which boards, if any, caused the vehicle to “raise up.” The testimony adduced at the hearing from the investigating officer established that the bridge surface was slippery, but he had no trouble crossing the Roach Truss Bridge when he arrived on the scene. Based upon the evidence submitted in this claim, the Court is of the opinion that although this bridge was in poor condition, claimant has not established that the condition of the bridge at that *124 time was the proximate cause of her failure to maintain control of her vehicle as she drove across the bridge. The slippery condition of the bridge deck did not appear to be either a cause of or a contributing factor to the accident. It would be mere speculation on the part of the Court to conclude exactly what caused the claimant to lose control of her vehicle at the time of her accident. This Court has consistently declined to make a finding for claimants in claims where it would have to resort to speculation in order to make awards.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.